IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICIA CAVALLARO and MONIQUE HERMAN, on behalf of themselves and all other employees similarly situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>UMASS MEMORIAL HEALTH CARE, INC., UMASS MEMORIAL HOSPITALS, INC., UMASS MEMORIAL MEDICAL CENTER, INC., HEALTHALLIANCE HOSPITALS, INC., MARLBOROUGH HOSPITAL, THE CLINTON HOSPITAL ASSOCIATION, AND WING MEMORIAL HOSPITAL CORPORATION,<br><br>DEFENDANTS. | Civil Action No. 4:09-cv-40181-FDS |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF JULY 2, 2010 MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO REMAND AND DEFENDANTS' MOTION TO DISMISS**

**I.   Introduction**

In their Motion for Reconsideration, Plaintiffs do not deny that they were covered by collective bargaining agreements ("CBAs") during the employment periods at issue. Plaintiffs also do not deny that they failed to exhaust the grievance and arbitration proceedings required by the applicable CBAs. Rather, Plaintiffs contend the CBAs governing their employment are irrelevant to this dispute because their claims arise independently of the CBAs. Plaintiffs' arguments incorrectly attempt to avoid decades of well established law and the CBAs governing their employment, and ultimately crumble upon inspection.

Similar arguments against the preemption of state law claims by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 85 ("LMRA"), were recently asserted and rejected in *Pruell v. Caritas Christi*, Civil Action No. 09-11722-GAO, 2010 U.S. Dist. LEXIS 101770 (D.

1

Mass. Sept. 27, 2010).  As will be discussed in detail below, the *Caritas* Court held that all 13 state law claims identical to those asserted here were preempted by the LMRA because they contained CBA provisions that required interpretation – not mere reference to – in order to resolve the plaintiffs' claims.  *Id.* at 9-12.  The need to interpret the CBAs' provisions in order to resolve the plaintiffs' claims created original federal question jurisdiction justifying removal and requiring dismissal. *Id*. at 4, 9-12.

Contrary to Plaintiffs' arguments here, this Court correctly held that Plaintiffs' Complaint was properly removed because state law claims were preempted by the LMRA since it is necessary to interpret the applicable CBAs in order to resolve the claims. (Dismissal Order, pp. 7-11, Doc. No. 33).  This Court also correctly dismissed Counts 1, 3, 4, 5, 8, 9, and 11 based on that preemption and Plaintiffs' failure to exhaust the grievance and arbitration proceedings required in the CBAs.[1] *Id.* at 13.  Plaintiffs' Motion for Reconsideration should be denied.

## II.     CBAs Must Be Interpreted to Resolve Plaintiffs' Claims

Plaintiffs admit that Section 301 governs claims founded directly on rights created by CBAs, and also claims substantially dependent on analyses of CBAs. (Plaintiffs' Memorandum in Support of Motion for Reconsideration, p. 5, Doc. No. 2 ("Pfs. Mem. p.__")).  These admissions are not surprising given it is well-settled that state law claims "founded directly on

---

[1] As collectively discussed in Defendants' Motion for Reconsideration of July 2, 2010 Memorandum and Order on Plaintiffs' Motion to Remand and Defendants' Motion to Dismiss and July 2, 2010 Order for Remand ("Defendants' Motion for Reconsideration") and their Memorandum in Support (Document Numbers 37 and 38; hereafter "Doc. No. __") and Defendants' Motion for Leave to File Notice of Supplemental Authority and their Memorandum in Support (Doc. Nos. 51 and 52), Defendants contend that the remaining state law claims in Counts 2, 6, 7, 10, 12 and 13 of the original State Court Complaint (Doc. No. 1) also are preempted by Section 301 of the LMRA and therefore create original Federal Court jurisdiction, were properly removed to this Court, and ultimately should be dismissed based on Plaintiffs' failure to exhaust the grievance and arbitration procedures in the CBAs.

rights created by" a CBA, *Caterpillar, Inc., v. Williams*, 482 U.S. 386, 393 (1987), or whose resolution "depen[d] on the meaning of a collective bargaining agreement" are preempted by Section 301 of the LMRA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06(1988); *Filbotte v. Pennsylvania Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997); *Mitchell v. Globe Newspaper, Inc.*, 602 F. Supp.2d 258, 260-61 (D. Mass. 2009); *Caritas*, 2010 U.S. Dist. LEXIS 101770 *6.

Plaintiffs, though, attempt to circumvent Section 301's broad preemptive reach by asserting that each dismissed claim arises from substantive legal rights that exist "independent" of any rights afforded under the CBAs. (Pfs. Mem. p. 2, Doc. No. 2).[2] Plaintiffs argue that what they seek is "the right to be paid for all hours worked," which they posit is a right independent of and not dependent on a CBA. *Id*. at 6. Running from Section 301's reach, they go so far as to say that "[t]o be sure, plaintiffs are not claiming unpaid wages for compensation that was negotiated under the CBAs over and above what federal and state law requires; they are merely seeking payment for all hours worked." *Id*. at 2. However, Plaintiffs' independence argument, even if accepted (which Defendants do not) stops short and omits a necessary component – analyses of what compensation the Plaintiffs' would be due if it was determined that they had not been paid for all hours suffered or permitted to work.

Even if Plaintiffs' argument that they had rights to be paid for all hours worked independent of the CBAs were true, Plaintiffs still could not avoid application of Section 301 preemption. The question as to whether Plaintiffs' claims asserting those purported independent

---

[2] On July 2, 2010, this Court dismissed the following Counts based on LMRA preemption: Count 1, Massachusetts Weekly Wage Act ("MWWA"), Mass. Gen. Laws Ch. 149 § 148; Count 3, Breach of Contract: Failure to Pay Earned Wages; Count 4, Breach of Contract: Failure to Provide or Pay for Missed and/or Interrupted Meal Breaks; Count 5, Breach of Implied Contract; Count 8, Fraud; Count 9, Negligent Misrepresentation; and Count 11, Promissory Estoppel.

rights could be resolved without interpreting CBAs' terms would remain. As this Court correctly answered that question, the CBAs do have to be interpreted because of their many complex provisions covering Plaintiffs' claims, including but not limited to analyzing: whether covered nurses were owed compensation for attending training as provided for by the CBA (Doc. 1, Ex. C, § 5.04(b), Staff Development); when premium pay for daily overtime and other premium pay is earned (*Id.* at §§ 6.01(a) and (h)); and what circumstances impact whether meal breaks must be paid pursuant to the CBAs. (*Id.* at § 6.05). (Doc. No. 33, p. 10).

Plaintiffs cannot ignore this reality even in the legal authority they quote. For instance, they quote a Tennessee state court case, *Goot v. Metro. Gov't of Nashville & Davidson County*, for the proposition that implied covenants create "the right and expectation to be paid the agreed upon wage and the right and expectation of having work hours consistent with applicable federal and state law." (Pfs. Mem., p. 7, citing *Goot v. Metro. Gov't of Nashville & Davidson County*, 2005 WL 3031638 at *6-8 (Tenn. Ct. App. Nov. 9, 2005)). As an initial matter, *Goot* does not involve a CBA or address LMRA preemption issues. Rather, it is a case addressing claims to life insurance benefits of surviving spouses of former municipal government employees and whether those claims arise in tort or contract under Tennessee state law such that they could be barred by Tennessee's Governmental Tort Liability Act. As such, the case in no way supports Plaintiffs' arguments here.

Moreover, "the right and expectation to be paid *the agreed upon wage*," as quoted by Plaintiffs, would necessarily depend on analyses of applicable CBAs. Plaintiffs continue on, arguing that "unless a contract provides differently, an employee has a contractual right to be paid for all hours that he is suffered or permitted to work." (Pfs. Mem., p. 7) Where would one look to determine "unless a contract provides differently?" One would have to interpret the contracts, i.e., the

4

CBAs.

### A. This Court Properly Found that Interpretation of CBAs Is Required to Resolve Count 1, the Massachusetts Weekly Wages Act Claim

The Massachusetts Weekly Wage Act ("MWWA") provides that "[e]very person having employees in his service shall pay weekly or bi-weekly each such employee *the wages earned by him* to within six days of the termination of the pay period during with the wages were earned . . . ." Mass Gen. Laws ch. 149, § 148 (emphasis added). The MWWA also requires that individuals leaving employment "*be paid in full.*" *Id*. (emphasis added).

#### 1. Plaintiffs' Attempted End-Run Around Section 301 Is Contradicted By Their First Amended Complaint

Seeking to avoid Section 301's reach resulting from a need to interpret the CBAs, in their Motion for Reconsideration Plaintiffs in essence characterize the MWWA as simply requiring that they be paid for all hours worked, without any consideration as to how much or what they should be paid. *Id.* at 6. Such an argument defies reason. They argue they are owed wages, but determining on what bases and the amounts they are owed are wholly irrelevant. Defendants submit that Plaintiffs will change their position on that point if this case reaches trial.

Further, this position in support of their Motion for Reconsideration is contrary to Plaintiffs' claims in their recently filed First Amended Complaint. (Doc. No. 49)  In their First Amended Complaint, Plaintiffs claim they were "not fully compensated" for work they perform during breaks, and hours worked during meal breaks "should have been calculated at applicable premium rates." *Id.* at ¶¶ 42 and 44. Plaintiffs' First Amended Complaint also seeks compensation "that should have been calculated at applicable premium rates" for alleged unpaid preliminary and postliminary work and training. *Id.* at ¶¶ 48 and 52. In addition, Plaintiffs claim they provided services and labor "to defendants in return for compensation under the provisions of the contract" (*Id.* at ¶ 61) and

"[s]pecifically, defendants contracted to hire Plaintiffs and Class Members at a *set rate of pay*, with a *set work schedule for a particular position*, under *set terms of employment*." *Id.* at ¶ 69 (emphasis added). Plaintiffs claim "all earnings and overtime due." *Id.* at ¶ 80. Accordingly, Plaintiffs' claims go far beyond a request simply to be paid for all hours suffered or permitted to work irrespective of the bases for and amounts due, as they argue in their Motion for Reconsideration. Rather, Plaintiffs seek "full" payment of "all earnings" calculated at "applicable premium rates" based on a "set rate of pay," a "set work schedule for a particular position," and under "set terms of employment." Resolving Plaintiffs' MWWA claims requires interpreting the CBAs to analyze these factors, since the MWWA mandates that employees "be paid in full" their "wages earned" by a certain date.

### 2. CBAs Must Be Interpreted to Resolve Plaintiffs' MWWA Claims

This Court correctly found that a threshold issue in determining whether the MWWA timely payment requirement was violated is first analyzing whether Defendants owed Plaintiffs wages "at all." (Doc. No. 33, p. 10). In doing so, this Court correctly distinguished Plaintiffs' reliance on *Livadas v. Bradshaw*, 512 U.S. 107 (1994). As this Court noted, in *Livadas* the plaintiff concededly was paid all of her compensation due at the time of her discharge, but the payment was late because it was mailed to her. *Id.* at 111. Plaintiff sued under California's timely payment statute, seeking the penalty provided thereunder. *Id.* The *Livadas* court concluded that the claim was not preempted because its resolution was based on a wage concededly due and the primary text for deciding whether or not the plaintiffs was entitled to a penalty was not the CBA, but a calendar. *Id.* at 124. Such is not the case here where CBA terms provide the primary text.

This Court's reasoning is further supported by the recent *Caritas* decision from this District, which similarly distinguished *Livadas*. *Caritas*, 2010 U.S. Dist. LEXIS at *8. Plaintiffs in *Caritas*, who were represented by the same counsel as Plaintiffs here, Thomas & Solomon,

6

LLP, filed a Complaint in the Massachusetts Superior Court Department for Suffolk County on September 10, 2009, that was removed by the defendants to this District Court based on LMRA preemption. *Id.* at *3. The Complaint in *Caritas* is virtually identical to the original State Court filed Complaint that Plaintiffs Cavallaro and Herman filed here on the same day, September 10, 2009, in the Massachusetts Superior Court Department for Worcester that was removed to this Court by Defendants in this proceeding.[3] For instance, each Complaint contains the same 13 state law Counts, the same 195 paragraphs, and the same allegations with only the names of the different parties and entities substituted for one another.[4]

In holding that all claims were preempted and required dismissal, the *Caritas* Court found that the applicable CBAs, similar to those here, contained regular rate, shift differential and overtime provisions that required interpretation – not mere reference to – in order to resolve the plaintiffs' claims. *Id.* at 9-10. For instance, the Court found that to compute a remedy if liability was established, it would need to apply multiple CBA provisions to establish what the plaintiffs' wage rates would be because of the CBA provisions discussing regular base rates, daily overtime rates, shift and weekend differentials, and other provisions providing for overtime pay for hours worked in excess of a scheduled shift. *Id*. *Caritas* rejected Plaintiffs' argument that applying the many differential provisions did not require CBA interpretation, instead relying on the First Circuit Court of Appeals' decision in *Adames v. Executive Airlines, Inc.*, 258 F.3d 7 (1st Cir. 2001), which instructed that "interpretation" of a CBA is necessary where multiple provisions must be applied to determine a remedy. *Id.* at 8, citing *Adames*, 258 F.3d at 15 (emphasis added). Finally, *Caritas* also rejected Plaintiffs' argument that the LMRA could not preempt statutory

---

[3] *See*, Civil Action No. 09-11722-GAO, United States District Court of Massachusetts, Doc. No. 1; Civil Action No. 09-40181-FDS, *Infra.*, Doc. No. 1.
[4] *Id.*

7

wage claims because the claims involve non-negotiable rights guaranteed under state law, holding instead that even non-negotiable state law rights are preempted by the LMRA if interpretation of a CBA is required. *Id.* at 7, citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 n. 7 (1988). Having found that Section 301 of the LMRA preempted all state claims – statutory and common law - the Court determined they "must be dismissed as preempted by federal labor contract-law." *Caritas*, 2010 U.S. Dist. LEXIS *4, citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

Unlike *Livadas* but similar to *Caritas*, here many CBA provisions must be interpreted to determine if Plaintiffs were paid in full and in computing any potential remedy. That need for interpretation also renders this case similar to the First Circuit Court of Appeals' decision in *Adames*. There, a flight attendant asserted claims under Puerto Rico's wage and hour law. *Adames*, 258 F.3d at 13-14. The CBA governing the flight attendant did not clearly define her wage rate, but provided for payment based on three different pay rate categories, "flight time," "duty time," and "reserve time." *Id.* In finding the flight attendant's claims preempted,[5] the First Circuit explained that interpretation of the CBA was necessary because to assess the remedy, twice her regular rate, the court had to apply multiple CBA provisions "to establish what the regular rate would be." *Id.* at 15. *See also Atchley v. Heritage Cable Vision Assocs., 101 F.3d 495, 500 (7th Cir. 1996)* (holding claims for unpaid wages under Indiana Wage Payment Act preempted by the LMRA where calculation of due date for wages and applicable penalties had to be determined from provisions of the CBA); *Carter v. Tyson Foods, Inc.*, No. 08-209, 2009 U.S. Dist. LEXIS 116275 at *8 (N.D. Ill. Dec. 3, 2009) (stating that application of the "CBA's

---

[5] *Adames* dealt with preemption under the Railway Labor Act, but the preemption analysis under that Act and the LMRA are identical. *Hawaiin Airlines, Inc. v. Norris*, 512 U.S. 246, 264 (1994).

8

extensive provisions regarding the calculation of compensable time" was interpretation); *Padilla-Gonzalez v. Local 1575*, 635 F. Supp. 2d 105, 112 (D.P.R. 2009) (suggesting the need for "complicated calculations" amounts to interpretation),

Similar to *Adames* and *Caritas*, here in order to determine whether Plaintiffs or putative class members were "paid in full" all their "wages earned" as required by MWWA, and, if not, what is their remedy, one must interpret many complex provisions in the CBAs governing their employment, including but not limited to interpreting CBAs to answer whether they: (1) were required to remain in the patient care area during meal periods as determined in accordance with the CBAs; (2) were entitled to overtime for authorized time worked in excess of 8 hours on shift, regardless of whether the employee worked under or over 40 hours in a week; (3) were entitled to payment for educational training programs and/or submitted appropriate requests for time off to attend the same; (4) were eligible for a shift differential for evening and/or night shifts; (5) were eligible for a shift differential for weekend shifts; (6) were eligible for a shift premium for working a shift was a Resource Nurse or Nurse Preceptor; (7) were eligible for premium pay for holiday shifts; (8) were entitled to have paid vacation, personal, holiday, or paid educational leave considered time worked for purposes of calculating overtime compensation; (9) were on full-travel status such that certain of the overtime provisions did not apply; (10) were entitled to minimum hours of pay at certain premiums called in while on-call regardless of the total time worked; and (11) were entitled to pay for non-restricted call work hours. *See* Doc. No. 1, Exs. A-C, CBAs Article V, Professional Issues, Section 5.04(b), Staff Development; Section 5.07, Resource Nurse; Section 5.08, Nurse Preceptor; Article VI, Workweek and Work Schedules, Section 6.01A, Scheduled Hours, Workweek, and Work Schedules & 6.04(a)(1), (b), & (h)(7), Overtime & 6.05, Meal Periods; Section 6.07, Call; Section 6.08, Stand-by (On Call) Duty; Article VII, Salary Rates/Differentials; and Article XXII, Management Rights. The

answers to all of these questions are needed to determine if Plaintiffs and putative class members were paid all earnings and overtime due in compliance with MWWA. Contrary to Plaintiffs' "independent" claim argument, these answers can only be obtained by interpreting the applicable CBAs. Consequently, the MWWA claim is preempted and this Court should deny Plaintiff's Motion to Reconsider.

### B. This Court Properly Found that Interpretation of CBAs Is Required to Resolve Counts 3, 4, 5, 8, 9, and 11

This Court properly dismissed Plaintiffs' common law claims for breach of contract (Counts 3 and 4), breach of implied contract (Count 5), fraud (Count 8), negligent misrepresentation (Count 9), and promissory estoppel (Count 11). (Doc. No. 33, p. 11)   Plaintiffs' argument for reconsideration on these common law claims is similar to their argument for the MWWA claim, namely, that their common law rights are independent of the CBAs and the amount sought or allegedly earned is irrelevant. (Pfs. Mem. pp. 2-3, 6-7)  They further contend that the common law rights arise out of non-CBA implied and express individual contracts and covenants. *Id.*

Plaintiffs' common law claims arguments fail for the same reason their statutory claim arguments fail:  their resolution requires interpretation of complex CBA provisions.  As detailed above, governing CBAs must be interpreted to determine whether Plaintiffs received all compensation they were due for the hours they worked and, if not, the extent of any remedy. *See also Caritas*, 2010 U.S. Dist. LEXIS at *12.  Plaintiffs' common law claims also fail because they arise out of and are created by the CBAs. *See Flibotte v. Penn Truck Lines, Inc.,* 131 F.3d 21, 26 (1st Cir. 1997) (a state law claim is preempted "if it alleges conduct that arguably constitutes a breach of a duty that arises pursuant to a collective bargaining agreement.").

### 1. Determining Whether Alleged "Individual" Contracts Could Even Be Enforceable Requires CBA Interpretation and Creates Preemption

Plaintiffs do not deny that they are covered by CBAs. Accordingly, the Court must first determine whether the CBAs cover Plaintiffs' dismissed common law claims. The Court cannot make that determination without first interpreting the CBAs to see whether the subject matter of the claims is addressed. Thus, each Plaintiffs' common law claims are either based on the express CBAs, or at a minimum would require the Court to analyze the CBA provisions to determine that they are not covered. Either way CBA interpretation is required, creating preemption.

Further, as this Court correctly reasoned, determining whether the alleged independent contracts are enforceable requires interpretation of the CBAs' integration clauses to see if the CBAs were intended to be the sole agreement between the parties. (Doc. No. 33, p. 7, and the authority cited therein). That interpretation also creates LMRA preemption. *Id.* Once interpreted, it is clear the integration clauses prohibit collateral agreements, express or implied.[6]

To the extent Plaintiffs rely on *Caterpillar* to argue that individual contracts are not superseded by CBAs, such reliance is misplaced. *Caterpillar* is inapplicable to the facts of this case because *Caterpillar* dealt with an individual contract negotiated for a position not covered by a CBA at a time when the employee asserting the contract claim was not covered by a CBA. 482 U.S. at 394-95. Thus, *Caterpillar's* reasoning does not apply to exempt Plaintiffs' common law claims from Section 301 preemption.

---

[6] The CBAs contains integration clauses which state that "[the parties shall be governed exclusively by and limited to the terms and provisions of this Agreement and ... neither shall have any obligation or be obliged to negotiate with respect to ...wages, hours or other terms and conditions of employment whether or not specifically included in this Agreement . . . . Any prior agreements covering employees covered by this Agreement shall be terminated and of no effect upon the effective date of this Agreement and shall be superseded by this Agreement." (Doc. No. 1, Exs. A, B, and C, CBA, Article XXIII, Scope of Agreement.)

11

### 2. This Court Correctly Dismissed Plaintiffs' Common Claims in Counts Counts 3, 4, 5, 8, 9, and 11

As this Court correctly found, an analysis of the CBAs reveals they do cover the allegations and relief sought in Plaintiffs' dismissed common law claims. (Doc. No. 33, p. 8-9) Plaintiffs' claims for all wages earned, including applicable premiums, cannot be resolved without interpreting the CBA provisions discussed in Section A.2. above.

Consider for example the nurse who works two 12-hour shifts during one week, three 8-hour shifts during that week, and spent one hour attending a job-related educational program. Assume part of one shift was worked as a Resource nurse, two of the shifts were night shifts, one was a day shift on a holiday, and there were questions as to whether the Nurse's Manager had in fact determined that the employee was to remain in a patient care area during a designated mealtime on a shift and whether the nurse properly submitted a request to attend the one hour educational program. Resolving the nurse's claim for that one week alone would require interpretation of several CBA provisions, including but not limited to: Section 6.05, Meal Periods and determining whether the employee reasonably relied on the Nurse Manager's communications about staying in the patient care area during a mealtime such that the time should be paid; Section 5.04, Staff Development and whether the nurse was due payment for the educational program; Section 5.07, Resource Nurse and determining any shift differential due for a partial shift; Section 6.01, Scheduled Hours, Workweek, and Workday to determine when and what premiums may apply; Article VII, Salary Rates/Differentials to determine what premiums may apply; and Section 6.04, Overtime, to determine when she is eligible for overtime premium payments and how they are to be calculated. Only after interpreting these provisions could the fact finder conclude whether or not the nurse was paid "all wages earned" at the "applicable premium rates" that Plaintiffs seek.

12

Other courts also have found that similar common law claims seeking wages are preempted by Section 301 of the LMRA, thereby creating original federal question jurisdiction supporting removal and requiring dismissal. *See Caritas*, 2010 U.S. Dist. LEXIS at *12 (dismissing breach of contract and implied contract, fraud, negligent misrepresentation, promissory estoppel, and other common law claims based on Section 301 preemption); *DiGiantommaso v. Globe Newspaper Co.*, 632 F. Supp. 2d 85, 87-89 (D. Mass. 2009) (promissory estoppel, unjust enrichment, conversion, and breach of implied covenant of good faith and fair dealing claims based on failure to pay wages for time worked during breaks preempted by Section 301; *Carter,* 2009 U.S. Dist. Lexis at *26-33 (breach of contract and quantum meruit claims were preempted and required dismissal.) Consistent with these decisions, this Court properly dismissed Counts 3, 4, 5, 8, 9, and 11. Plaintiffs' Motion for Reconsideration should be denied.

        **C.**    **Dismissed Claims Should Not Be Reinstated Where The Named And Only Party Plaintiffs Cannot Assert Them**

Finally, this Court should reject as unfounded Plaintiffs' argument that even if this Court upholds its preemption rulings, dismissed Counts 1, 3, 4, 5, 8, 9, and 11 should be reinstated as to opt-in and putative plaintiffs who are not covered by a CBA. No motion for class certification under Fed. R. Civ. P. 23 has been filed or granted. The FLSA's collective action or opt-in procedure pursuant to 29 U.S.C. § 216(b) does not apply to the dismissed state law claims, nor are any opt-in plaintiffs in the above-styled action. In this action's current posture, named Plaintiffs' Cavallaro and Herman are the <u>only</u> individuals before the Court, and the only individuals who have asserted or have standing to assert the dismissed claims.

Plaintiffs' reliance on *Hinterberger v. Catholic Health*, Case No. 08-cv-380S, 2009 U.S. Dist. LEXIS 108116 (W.D.N.Y. Nov. 2009), is misplaced. There, the court deferred ruling on the defendants' motion to dismiss state law claims based on LMRA preemption because it was unclear

13

which CBAs applied and covered the named plaintiffs or potential plaintiffs. *Id.* at *15. Here, there is no similar uncertainty as to which CBAs cover the named Plaintiffs. The CBAs in Exhibits A, B, and C to Defendants' Notice of Removal (Doc. No. 1) indisputably govern named Plaintiffs Cavallaro and Herman, who at this juncture are the only party Plaintiffs in the case. Accordingly, this Court's Dismissal Order did not affect the putative class members for better or worse because they are not before this Court in this proceeding. Plaintiffs' request to reinstate dismissed claims for the purported benefit of non-parties should be denied.

**III.   Conclusion**

For the foregoing reasons, Plaintiffs' Motion for Reconsideration should be denied in its entirety.

UMASS MEMORIAL HEALTH CARE, INC., UMASS MEMORIAL HOSPITALS, INC., UMASS MEMORIAL MEDICAL CENTER, INC., HEALTHALLIANCE HOSPITALS, INC., MARLBOROUGH HOSPITAL, THE CLINTON HOSPITAL ASSOCIATION, AND WING MEMORIAL HOSPITAL CORPORATION,

By their attorneys,

/s/ Lisa A. Schreter
Lisa A. Schreter
Angelo Spinola
LITTLER MENDELSON, P.C.
3344 Peachtree Road, N.E., Suite 1500
Atlanta, GA  30326
Phone: 404.233.0330
Fax: 404.233.2361
lschreter@littler.com
aspinola@littler.com

Gregory C. Keating (BBO # 564523)
LITTLER MENDELSON, P.C.
One International Place, Suite 2700
Boston, MA  02110
Phone 617.378.6000
Fax 617.737.0052
gkeating@littler.com

**CERTIFICATE OF SERVICE**

I, Lisa A. Schreter, hereby certify that on this 26th day of October, 2010, the foregoing Defendants' Opposition To Plaintiffs' Motion For Reconsideration Of July 2, 2010 Memorandum And Order On Plaintiffs' Motion To Remand And Defendants' Motion to Dismiss was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, will be sent electronically to the registered participants as identified on the Notice of electronic filing and also via first class mail to plaintiffs' counsel of record:

> Jody L. Newman
> Ariatna Villegas-Vasquez
> DWYER & COLLORA, LLP
> 600 Atlantic Avenue
> Boston, MA 02210-2211
>
> Patrick J. Solomon, Esq.
> Michael J. Lingle, Esq.
> THOMAS & SOLOMON LLP
> 693 East Avenue
> Rochester, NY 14607

/s/ Lisa A. Schreter
Lisa A. Schreter

Firmwide:98320834.1 058224.1002