# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICIA CAVALLARO and MONIQUE HERMAN, on behalf of themselves and all other employees similarly situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>UMASS MEMORIAL HEALTH CARE, INC., UMASS MEMORIAL HOSPITALS, INC., UMASS MEMORIAL MEDICAL CENTER, INC., HEALTHALLIANCE HOSPITALS, INC., MARLBOROUGH HOSPITAL, THE CLINTON HOSPITAL ASSOCIATION, AND WING MEMORIAL HOSPITAL CORPORATION,<br><br>DEFENDANTS. | Civil Action No.  4:09-cv-40181-FDS |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

## I.    INTRODUCTION

Defendants[1] move, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings and the dismissal of all of Plaintiffs Patricia Cavallaro's and Monique Herman's ("Plaintiffs") remaining Counts in the above-styled action.  Each of Plaintiffs' remaining claims[2] are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), and must be dismissed due to Plaintiffs' failure to exhaust the grievance and arbitration policies in the Collective Bargaining Agreements ("CBAs") governing Plaintiffs' employment.

Defendants also move pursuant to Fed. R. Civ. P. 12(c), *Ashcroft v. Iqbal*, 129 S.Ct. 1937

---

[1] For purposes of this Motion, "Defendants" collectively refers to the following named defendants in the above-styled action:  UMass Memorial Health Care, Inc.; UMass Memorial Hospitals, Inc.; UMass Memorial Medical Center, Inc.; HealthAlliance Hospitals, Inc.; Marlborough Hospital; The Clinton Hospital Association; and Wing Memorial Hospital Corporation.

[2] The remaining claims are as follows:  Count 2, Failure to Pay Overtime Wages, Mass. Gen. Laws Ch. 151 § 1A; Count 6, Money Had and Received in Assumpsit; Count 7, Quantum Meruit/Unjust Enrichment; Count 10, Conversion; Count 11, Failure to Keep Accurate Records.  All other claims in the First Amended Complaint were dismissed by this Court in its July 2, 2010, Memorandum and Order on Plaintiffs' Motion to Remand and

(2009) and *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), for judgment on the pleadings and the dismissal of all claims in the First Amended Complaint ("Amended Complaint") filed October 11, 2010.  Plaintiffs have failed to plead standing and establish the case-or-controversy requirement under Article III of the United States Constitution against any of the Defendants. Plaintiffs also have failed to sufficiently plead employment, direct, joint or otherwise, by any of the Defendants.   Finally, Plaintiffs' claims should be dismissed due to improper claim-splitting. Accordingly, Defendants should be granted judgment on the pleadings and all of Plaintiffs' claims should be dismissed.

## II.   PROCEDURAL HISTORY

Plaintiffs' filed this suit against Defendants individually and on behalf of a class of similarly situated employees in the Superior Court Department, Middlesex County, Commonwealth of Massachusetts, Civil Action No. 2009-3539 ("State Court Action").   Plaintiffs alleged two Massachusetts statutory-based counts and 11 state common law counts all related to the alleged non-payment of wages earned for time worked, including alleged unpaid premium amounts due.  (*See* Doc. No. 1)[3] The State Court Action was timely removed to this Court on October 16, 2009. *Id.*  On October 23, 2009, Defendants filed a Motion to Dismiss, a supporting Memorandum of Law, and a Reply seeking the dismissal of all 13 Counts based on various grounds. (*See* Doc. Nos. 11, 12, and 31.).  Defendants filed an Opposition to Plaintiffs' Motion to Remand on December 10, 2009. (Doc. No. 21)

On July 2, 2010, this Court issued its Memorandum and Order on Plaintiffs' Motion to Remand and Defendants' Motion to Dismiss ("Order On Motions"). (Doc. No. 33)  In its Order on

---

Defendants' Motion to Dismiss ("Order on Motions"), Document Number 33 ("Doc. No. __").

[3] The same Plaintiffs also filed a parallel action in this Court seeking recovery for the same alleged compensable work time under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), as well as other claims.  *See Cavallaro, et al. v. UMass Memorial Healthcare, Inc., et al.*, Case No. 4:09-cv-40152, United States District Court,

Motions, this Court held that Plaintiffs' Complaint was properly removed because state law claims were preempted by Section 301 of the LMRA since it is necessary to interpret the applicable CBAs in order to resolve the claims. (Doc. No. 33, pp. 2, 7-11, Doc. No. 33)  This Court also correctly dismissed Counts 1, 3, 4, 5, 8, 9, and 11 based on Section 301 preemption and Plaintiffs' failure to exhaust the grievance and arbitration proceedings required in the CBAs.  *Id.* at 13.  This Court recognized that in their October 23, 2009 Motion to Dismiss, Defendants did not expressly move for dismissal of remaining Counts 2, 6, 7, 10, 12, and 13 based on Section 301 preemption.  Rather, Defendants moved for dismissal of remaining Counts 2, 6, 7, 10, 12, and 13 based on alternative grounds (Doc. Nos. 12 and 31), which have yet to be ruled on.

Despite asserting alternative grounds for dismissal of Counts 2, 6, 7,10, 12, and 13 in their initial Motion to Dismiss, Defendants nonetheless did argue in their Opposition to Plaintiffs' Motion to Remand that "all of [Plaintiffs'] common law claims . . . are still completely preempted by Section 301 because resolution of these claims 'arguably hinges upon the interpretation of' relevant collective bargaining agreements.'" (Doc. No. 38, p. 2, citing Doc. No. 21, p. 5)  This Court noted that Defendants did argue in their Opposition to Plaintiffs' Motion to Remand that all of Plaintiffs' claims are completely preempted by Section 301, even though Defendants expressly argued for dismissal based on Section 301 preemption against only Counts 1, 3, 4, 5, 8, 9, and 11 in their earlier Motion to Dismiss. (Doc. No. 33, p. 5 n.3) Accordingly, Defendants have consistently maintained throughout this litigation that statutory Count 1 and common law Counts 3 through 13 in the original Complaint are completely preempted by Section 301.

Notwithstanding, Defendants previously recognized their use of the phrase "all common law claims" may at times have been in-artful and unclear. (Doc. No. 38, p. 6 n.3).  Defendants also have noted that in relation to Count 2 seeking overtime under Mass. Gen. Laws ch. 151, § 1A, they did not

District of Massachusetts, Doc. No. 1.

argue for Section 301 complete preemption of that statutory Count as an initial matter based on and out of deference to *DiGiantommaso v. Globe Newspaper Co., Inc.*, 632 F. Supp. 2d 85, 90 (D. Mass. 2009), which included a statement in dicta that governing overtime "arguably" granted a non-waivable, state law right that exists independently of the CBA. (Doc. No. 38, p. 6 n.3; Doc. No. 52, p. 5 n.5)   However, since the filing of Defendants' October 23, 2009 Motion to Dismiss and related briefing, a decision out of this District Court has squarely analyzed whether Mass Gen. Laws ch. 151, § 1A ("Chapter 151") may be preempted by Section 301, and concluded in circumstances almost identical to those here that it is completely preempted.  *See Pruell v Caritas Christi*, Civil Action No. 09-11722-GAO, 2010 U.S. Dist. LEXIS 101770 *3, 10-12 (D. Mass. Sept. 27, 2010) (holding that a Chapter 151 claim for overtime is completely preempted by Section 301 of the LMRA due to the need to interpret governing CBA provisions to resolve the claim and determine what, if any, additional compensation is due).  Defendants believe that *Caritas*' full examination of Section 301 preemption of a Chapter 151 claim and its reliance on the First Circuit Court of Appeals' decision in *Adames v. Executive Airlines*, Inc., 258 F.3d 7 (1st Cir. 2001), instructing that "interpretation" of a CBA is necessary where multiple provisions must be applied to determine a remedy, is well reasoned and demonstrates that as a matter of law even non-negotiable state law rights are preempted by Section 301 if interpretation of a CBA is required.  *See Caritas*, 2010 U.S. Dist. LEXIS *7; *Adames*, 258 F.3d at 15, *citing Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 n. 7 (1988).

Accordingly, Defendants now move for judgment on the pleadings and dismissal of all remaining Counts 2 (Chapter 151), 6 (Money Had and Received in Assumpsit), 7 Quantum Meruit/Unjust Enrichment), 10 (Conversion), and 11 (Failure to Keep Accurate Records) in Plaintiffs' First Amended Complaint filed October 11, 2010 based on  Section 301 preemption.[4]

---

[4] On October 11, 2010, Plaintiffs' filed their First Amended Complaint that omitted prior individual named Defendants John O'Brien and Patricia Webb, and also omitted prior Count 10 for Equitable Estoppel and prior

(Doc. No. 49)  Defendants also move for judgment on the pleadings and dismissal of all claims based on Plaintiffs' failure to plead standing and a necessary employment relationship with respect to any and all of the Defendants.  Dismissal of all claims is further warranted due to Plaintiffs' improper claim-splitting.

## III.   THE FIRST AMENDED COMPLAINT'S ALLEGATIONS AND OMISSIONS

### A.   Plaintiffs Seek All Earnings Allegedly Due, Including Applicable Premium Rates

The allegations in the First Amended Complaint ("Amended Complaint") filed on October 11, 2010 can be briefly summarized.  Plaintiffs purport to represent a class of current and former employees of Defendants.  (*See* Am. Comp., ¶¶ 13-14)  Plaintiffs claim they were "not fully compensated" for work they perform during breaks, and hours worked during meal breaks "should have been calculated at applicable premium rates." (*See* Am. Comp., ¶¶ 42 and 44).  They seek compensation "that should have been calculated at applicable premium rates" for alleged unpaid preliminary and postliminary work and training. *Id*. at ¶¶ 48 and 52.  Plaintiffs claim they provided services and labor "to defendants in return for compensation under the provisions of the contract" (*Id*. at ¶ 61) and "defendants contracted to hire Plaintiffs and Class Members at a *set rate of pay*, with a *set work schedule for a particular position*, under *set terms of employment*." *Id*. at ¶ 69 (emphasis added).  Plaintiffs allege an express contract that "embodied all legal requirements concerning the payment of such wages" (*Id*. at ¶63) and maintain the failure to pay for all time worked, including

---

Count 11 for Promissory Estoppel. (*See* First Amended Complaint, Doc. No. 49, hereinafter "Am. Comp.__"). Accordingly, prior Count 12 (Conversion) is now Count 10 in the First Amended Complaint, and prior Count  13 (Failure to Keep Accurate Records) is now Count 11. *Id*. at Counts 10 and 11. Plaintiffs re-alleged in the First Amended Complaint the following Counts that this Court previously dismissed as completely preempted by Section 301:  Count 1 (Chap. 149, MWWA), Count 3 (Breach of Contract: Failure to Pay Earned Wages); Count 4 (Breach of Contract: Failure to Provide and Pay for Missed and/or Interrupted Meal Breaks); Count 5 (Breach of Implied Contract); Count 8 (Fraud); and Count 9 (Negligent Misrepresentation).  Defendants understand that the previously dismissed Counts were re-alleged for the sole purpose of maintaining Plaintiffs' arguments during the pendency of Plaintiffs' Motion for Reconsideration of this Court's July 2, 2010 Order on Plaintiffs' Motion to Remand and Defendants' Motion to Dismiss ("Order on Motions") (Doc. No. 33).

"applicable premium pay," constitutes conversion of monies owed that should have been paid "at regular or premium rates for time worked." *Id.* at ¶¶ 82, 83.  The failure to "pay for all the hours worked including applicable premium pay . . . has unjustly enriched defendants to the detriment of Plaintiffs and Class Members," resulting in Plaintiffs' seeking the "reasonable value of the services performed." *Id.* at ¶¶ 91-92.  Thus, Plaintiffs claim "all earnings and overtime due." *Id.* at ¶ 80.

However, Plaintiffs omitted from the Amended Complaint the fact that they, as current or former employees of defendant UMass Memorial Medical Center, Inc. and members of the Massachusetts Nurses Association ("MNA"), and many of the putative class members are or were members of a union, and are subject to at least twenty-two (22) different CBAs applicable to many of the Defendants.  As unionized employees, Plaintiffs and many putative class members are and were subject to the provisions in their respective CBAs relating to scheduled work hours, meal breaks, daily and weekly overtime, premium shift differential and holiday pay, as well as comprehensive grievance procedures which govern employment disputes, among other provisions relevant to the resolution of the claims in this case.  Copies of the CBAs governing the Plaintiffs' employment were previously submitted to the Court.  (*See* Doc. Nos. 1, Exs. A, B, and C).

### B.      Neither Standing Nor Sufficient Employment Relationships Are Alleged

Plaintiffs do <u>not</u> allege a single particular fact regarding their employment relationships. Rather and as rejected by *Iqbal*, they put forth mere conclusory statements in reciting the elements used to show employment relationships.  Nowhere do Plaintiffs allege which of the seven named Defendants specifically employed them.  Instead, Plaintiffs implausibly argue that all seven Defendants "are the employer (single, joint or otherwise) of the Plaintiffs and Class Members and/or alter egos of each other." (Am. Comp. ¶ 7)  Plaintiffs do not even allege any basics about their employment such their titles, positions, dates of employment, pay or how many hours they worked each week.  There are <u>no</u> allegations that any particular Defendant caused injuries to either of the

Plaintiffs. For instance, nowhere is it alleged that a particular named Defendant engaged in a specific act that injured a named Plaintiff, much less any allegations showing how each particular Defendant engaged in act(s) that caused injuries to each named Plaintiff.

Rather, seeking to sweep all seven distinct named Defendants into this suit, Plaintiffs create the generic terms "UMass" and "defendants" in their Amended Complaint. *Id.* at ¶ 5. They allege the *undefined* term "UMass Memorial" is an enterprise engaged in the operation of a hospital and/or the care of the sick and is a healthcare consortium. *Id.* at ¶3 (emphasis added). However, Plaintiffs do not allege any facts supporting their conclusion that an undefined term or entity is an enterprise.

Plaintiffs also assert in conclusory fashion that "defendants' integrated labor relations and human resources are centrally organized and controlled (*Id.* at ¶ 6), but they do <u>not</u> allege: any facts stating how the purported integrated labor relations and human resources are organized or controlled; what role or duties are carried out by a purported senior vice president and chief human resources officer and where and for whom they are exercised; if such positions do exist whether they actually engage in any acts affecting any of the named Defendants; or what "system-wide" policies are maintained, who maintains them, how they are maintained, and whether they impact Plaintiffs. Plaintiffs conclusory allege "defendants share common management, including oversight and management by a administration and Board of Trustees which controls all of UMass' operations." *Id.* at ¶ 7. However, Plaintiffs do <u>not</u> allege any facts as to how "common management" is shared or structured vis-a-vis the several Defendants, or which managers are employed by which Defendant and whether they engaged in acts impacting any of the Defendants and Plaintiffs relevant to the issues in this case. Moreover, Plaintiffs do <u>not</u> allege who or what positions set or approve the relevant timekeeping, work, and compensation policies, or directs and controls the work of employees at each of the seven Defendants.

Defendants are alleged to have various centralized systems that are integrated throughout their locations as well as common ownership and financial control. *Id.* at ¶¶ 9-10.  Yet, <u>no</u> facts are provided to say how the various "centralized" systems are operated or structured, or how (if at all) they impact each of the seven Defendants and what role (if any) each of the Defendants play in the purported "centralized" systems.  There are <u>no</u> allegations as to who is an owner of whom or to what degree and in what way, or who exercises or has any financial control over whom and how they have that control.  In sum, Plaintiffs use conclusory, vague "buzz" words <u>absent any meaningful factual allegations</u> to try to construct the elements of a joint employer, integrated enterprise/single employer, or alter ego theory.  Their effort falls short, ultimately rendering the conclusory allegation that "defendants are the employer (single, joint or otherwise) of the Plaintiffs and Class Members" unsupported and implausible.  *Id.* at ¶11.

## IV.    ARGUMENT

At any time after the pleadings close and "within such time as not to delay trial," a party may move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Fed. R. Civ. P. 12(c).  Judgment on the pleadings should be granted if the movant "is entitled to judgment as a matter of law." *Burns Int'l Security Servs. V. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1994).  Rule 12(c) motions are analyzed under the standards applied to a motion to dismiss under Rule 12(b)(6). *Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 49 n.3 (1st Cir. 2009) ("The standard for evaluating a motion to dismiss is the same as that for a motion for judgment on the pleadings.") (*citing Citibank Global Markets, Inc. v. Santana,* 573 F.3d 17, 23 (1st Cir. 2009) ("to survive a motion to dismiss (or a motion for judgment on the pleadings), the complaint must plead facts that raise a right to relief above the speculative level.")).

### A.   Plaintiffs' Remaining Claims Are Preempted By Section 301 of the LMRA Because They Depend on Interpreting CBAs

As this Court has already held, the CBAs applicable to Plaintiffs contain detailed and comprehensive provisions addressing what constitutes compensable labor, provisions specifying payment and compensation to be provided for such work, and integration clauses stating that the promises and covenants in the CBAs are the exclusive agreements among the parties as to those subjects. *(See* Order On Motions, Doc. No. 33, pp. 7-11). Defendants further illustrated at length the extent to which the CBAs require interpretation in order to resolve Plaintiffs' claims for alleged earned wages including applicable premium pay in their Opposition to Plaintiffs' Motion for Reconsideration of the Order on Motions. (Doc. No. 54, pp. 5-14).

### 1.   Plaintiffs' Count 2, Chapter 151 Claim for Overtime Is Completely Preempted

As discussed in Section II above, Plaintiffs' statutory overtime claim in Count 2 under Chapter 151 is completely preempted by Section 301. The Chapter 151 claim seeks overtime wages as damages. The Amended Complaint alleges Plaintiffs were not paid "all earnings and overtime due," including "applicable premium pay." Plaintiffs further claim they were "not fully compensated" for work they performed during breaks, and hours worked during meal breaks "should have been calculated at applicable premium rates." In sum, Plaintiffs seek "full" payment of "all earnings" calculated at "applicable premium rates" based on a "set rate of pay," a "set work schedule for a particular position," and under "set terms of employment."

The CBAs governing Plaintiffs' employment contain numerous provisions, including but not limited to the following, that must be interpreted to determine if Plaintiffs were paid in full for overtime at the applicable premium rates and in computing any potential remedy: Section 6.05, Meal Periods and determining whether an employee reasonably relies on the Nurse Manager's communications about staying in the patient care area during a mealtime such that the time should be

paid; Section 5.04, Staff Development and whether the employee was due payment for the educational program; Section 5.07, Resource Nurse and determining any shift differential due for a partial shift; Section 6.01, Scheduled Hours, Workweek, and Workday to determine when and what premiums may apply; Article VII, Salary Rates/Differentials to determine what premiums may apply; and Section 6.04, Overtime, to determine when an employee is eligible for overtime premium payments and how they are to be calculated. (*See* Doc. No. 1, Exs. A-C; see also the discussion in Defendants' Opposition to Plaintiffs' Motion for Reconsideration of the Order on Motions, Doc. No. 54, pp. 6-10, 12).

Accordingly, even if one were to accept that Plaintiffs' statutory Chapter 151 right to overtime pay for time worked over 40 hours in a week arises independent of a CBA, resolving the claim for all earnings and overtime due at the applicable premium rates requires interpretation of the above CBA provisions, among others.  Even where a right may arise independent of a CBA, where resolution of the claim depends on interpretation of a CBA the claim is preempted.  *See Adames v. Executive Airlines, Inc.*, 258 F.3d 7, 15 (1st Cir. 2001) ("interpretation" of a CBA is necessary where multiple provisions must be applied to determine a remedy, thus resulting in Section 301 preemption); *Flibotte v. Pennsylvania Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997) (if a claim depends on the interpretation of a CBA's terms, it is preempted by Section 301); *Caritas,* 2010 U.S. Dist. LEXIS *7 (even non-negotiable state law rights are preempted by Section 301 if interpretation of a CBA is required), citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 n. 7 (1988); *Carter v. Tyson Foods, Inc.*, No. 08-209, 2009 U.S. Dist. LEXIS 116275 at *8 (N.D. Ill. Dec. 3, 2009) (stating that application of the "CBA's extensive provisions regarding the calculation of compensable time" was interpretation); *Padilla-Gonzalez v. Local 1575*, 635 F. Supp. 2d 105, 112 (D.P.R. 2009) (suggesting the need for "complicated calculations" amounts to interpretation).  Here,

the need to interpret several CBA provisions to resolve Plaintiffs' Chapter 151 claim in Count 2 and determine all their alleged earnings and overtime due at applicable premium rates completely preempts that claim.

### 2. Plaintiffs' Remaining Common Law Claims in Counts 6, 7, 10, and 11 Are Completely Preempted

Like Plaintiffs' dismissed breach of contract claims, their remaining quasi-contractual clams of money had and received in assumpsit (Count 6) and quantum meruit/unjust enrichment (Count 7) are preempted by § 301 of the LMRA. *See, e.g., Pruell v. Caritas Christi*, Civil Action No. 09-11722-GAO, 2010 U.S. Dist. LEXIS 101770 (D. Mass. Sept. 27, 2010) (dismissing all 13 state law claims due to Section 301 preemption including claims for money had and received in assumpsit, quantum meruit/unjust enrichment, conversion, failure to keep accurate records, and Mass. Gen. Laws ch. 151 § 1A); *DiGiantommaso*, 632 F. Supp. 2d at 88-91 (claims including unjust enrichment and conversion are preempted by Section 301).[5] The same is true for Plaintiffs' conversion (Count 10) claim.  To state a claim for conversion, Plaintiffs must prove that the defendant intentionally or wrongfully exercised acts of ownership, control or dominion over personal property to which it had no right of possession. *Bleicken v. Stark*, 61 Mass. App. Ct. 619, 622 n.2 (2004).  Accordingly, to make a determination regarding whether Plaintiffs have a possessory right or interest in the alleged wages which were unpaid to them and form the root of their conversion claim (in the event the Court determines a debt of wages is similar to personal property and can support a conversion claim), assessment of the terms of the CBAs is necessary. *See, e.g., O'Rourke*, 501 F. Supp. 2d at 450 (finding state law claims were preempted when "regardless of the specific legal theory of recovery

---

[5] *See also McCarty v. Reynolds Metals Co.*, 883 F. Supp. 356, 361 (S.D. Ind. 1995) (money had and received in assumpsit and quantum meruit/unjust enrichment claims preempted by Section 301); *Soremekun v. Thrifty Payless, Inc*., 509 F. 3d 978, 984 n. 32 (9th Cir. 2007) (quantum meruit claim preempted under by Section 301); *Carter v. Tyson Foods, Inc.*, 2009 U.S. Dist. LEXIS 116275, **32-33 (N.D. Ind. Oct. 13, 2009) (quantum meruit claim preempted by Section 301 because "the Court must interpret or apply the terms of the existing CBA in order to determine whether the Plaintiffs conferred a measurable benefit, for which they had a reasonable expectation of

for Plaintiffs' claims ... Plaintiffs' entitlement to any part of the back-pay sought under the Complaint is 'inextricably intertwined' with relevant provisions of the CBAs"); *Caritas*, 2010 U.S. Dist. LEXIS *11 (same).   Finally, there is no cause of action under Massachusetts law for a failure to keep accurate records as asserted in Count 11.   Thus, any purported duty to do so must arise out of the CBAs governing Plaintiffs' employment and determining if such duty exists or was breached results in Section 301 preemption. *See Flibotte,* 131 F.3d at 26 (if the duty is created by a CBA or depends on the interpretation of a CBA's terms, it is preempted by Section 301).

Consequently, all remaining claims in Counts 2, 6, 7, 10, and 11 are completely preempted by Section 301 of the LMRA.   Plaintiffs do not deny that they are covered by CBAs or allege that they exhausted the grievance procedures in the CBAs.   As this Court previously recognized in its Order on Motions, Plaintiffs' failure to exhaust available grievance procedures under the CBAs preclude this Court from treating these claims as having been brought under Section 301, and dismissal of these claims is thus required. (Doc. No. 33, p. 13)

### B.   Plaintiffs' Claims Should Be Dismissed Due to a Lack of Standing and a Failure to Sufficiently Allege Employment Relationships

As noted above, Rule 12(c) motions are analyzed under the standards applied to a motion to dismiss under Rule 12(b)(6).   As the United States Supreme Court recently explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65 (2007) (abandoning the "no set of facts" language of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) in favor of a "plausibility" standard) (quotations and citations omitted).   Such "[f]actual allegations must be enough to raise a right of relief above the speculative

---

payment...."); *O'Rourke v. Carmen M. Pariso, Inc.*, 501 F. Supp. 2d 445, 450 (W.D.N.Y. 2007) (same).

level," and Plaintiffs must state "enough facts to state a claim for relief that is plausible on its face." *Id.* at 1965, 1974.

In *Iqbal*, the Supreme Court reemphasized the *Twombly* pleading requirements, highlighting the following: (1) a pleading offering only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" does not comply with Fed. R. Civ. P. 8; (2) while Fed. R. Civ. P. 8 does not require detailed factual allegations, it "demands more than an unadorned, the defendant-unlawfully-harmed me accusation . . ."; and (3) a complaint will not survive a motion to dismiss if it contains merely "naked assertions devoid of further factual enhancement." 129 S. Ct. at 1949 (internal quotation marks and citations omitted).   The Supreme Court further explained that "*[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice*," and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 1949-50 (emphasis added).

### 1.    Plaintiffs' Failure to Show Standing Warrants Dismissal of All Claims

To satisfy the case-or-controversy requirement of Article III of the United States Constitution, Plaintiffs must show that they have "suffered 'injury in fact,' and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61(1992)).   The requirement of standing is not lessened for an individual plaintiff where that plaintiff files a class action complaint.  *See, e.g., Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. Unit A July 1981) (plaintiff failed to show he was denied federal financial assistance, and thus did not have standing to sue for discrimination).  As one federal district court has opined, "[t]he principles at the heart of Article III standing are simply too important to permit such bootstrapping" of a suit against a defendant on the theory that some member of a hypothetical class, if a class were certified, might have a claim against that defendant. *In Re Eaton Vance Corp. Securities Litig.*, 220 F.R.D. 162, 169 (D. Mass. 2004) (holding named class action

plaintiffs failed to establish standing as to two defendants from whom they did not personally purchase shares).

Here, Plaintiffs fail to allege in their Amended Complaint that they were employed by any particular Defendant. Nowhere is it alleged with whom Plaintiffs were actually employed. Because Plaintiffs have <u>not</u> alleged that they were employed by any particular Defendant, Plaintiffs have no basis to assert that they are owed any wages, and thus Plaintiffs have not alleged that they were injured in any manner by any particular Defendant. Accordingly, Plaintiffs lack standing to assert any claims against any of the Defendants in this action, and all claims should be dismissed on this ground alone. Courts have routinely dismissed claims against defendants for lack of standing where there are no facts to show that the plaintiff was caused harm by the particular defendant. See, *e.g.*, *Martin v. BMS Enterprises, Inc.*, 2010 U.S. Dist. LEXIS 66050, at * 11 (N.D. Tex. July 1, 2010) (dismissing putative FLSA collective action against seven related companies where the plaintiffs alleged a common enterprise with a scheme to deprive them of overtime pay but failed to allege injuries that each defendant caused to them and holding that "a named plaintiff in a collective action has adequately pleaded standing against a particular defendant only if the plaintiff has alleged an injury that defendant caused him"); *Diaz v. Adchem Pharma Operations*, 2005 U.S. Dist. LEXIS 46384 *10 (D. P.R. Sept. 28, 2005) (imposing rule 11 sanction against the plaintiffs' attorney where plaintiff filed FLSA collective action complaint against other subsidiaries of plaintiff's employer's corporate parent); *Chuy v. Hilton Mgmt., LLC*, 2010 U.S. Dist. LEXIS 45680 *9 (M.D. Fla. May 10, 2010) (dismissing wage claims for lack of standing against defendant Waldorf Management because no named plaintiff alleged they were employed by that defendant; rather they alleged only that they were employed by co-defendant Hilton Management.); *Daugherty v. I-Flow, Inc.*, 2010 U.S. Dist. LEXIS 49038 *8 (N.D. Tex. Apr. 29, 2010) (dismissing plaintiff's direct and class claims because he

failed to plead allegations sufficient or specific enough to show a causal connection between his injury and the conduct of any particular defendant(s)).

### 2. Plaintiffs' Failure To Sufficiently Allege Employment Relationships Warrants Dismissal

As shown in Section III.B. above, Plaintiffs do not allege that they were employed by a particular Defendant. They have not pleaded the requirements to establish direct employment against any of the seven named Defendants, much less to establish a relationship based on joint employer, integrated enterprise/single employer, or alter ego theories.[6]

Regarding Count 2, courts have consistently held that the Massachusetts statutory overtime provisions in Chapter 151 were intended to be "essentially identical" to the Fair Labor Standards Act ("FLSA"). *See Swift v. Autozone, Inc.*, 441 Mass. 443, 447 (2004) (holding the premiums paid can be credited to overtime obligations under Chapter 151 similar to crediting under the FLSA), *citing Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35, 40 (1st Cir. 1999); *see also Cash v. Cycle Craft Co.*, 508 F.3d 680, 687 (1st Cir. 2007) (the resolution of plaintiff's FLSA claim "determines his Massachusetts statutory claim."). Under the FLSA, to determine whether an employment relationship exists courts look to the "economic reality" of the totality of the circumstances bearing on whether the putative employee is economically dependent on the alleged employer. *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998). This test applies four factors, asking whether the alleged employer: (1) had the power to hire and fire the employee; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Id.*

---

[6] Even if Plaintiffs had sufficiently alleged direct employment relationships, which they did not do, and then joint employment relationships, which they also did not do, a finding that two companies are an employee's "joint employers" only affects each employer's liability to the employee for their *own* actions, not for each other's actions. *Torres-Negron v. Merck & Co.*, Inc., 488 F.3d 34, 40 n.6 (1st Cir. 2007). Accordingly, Plaintiffs must still plead how each particular Defendant injured her, which they have failed to do.

Applying the FLSA employer test to the "essentially identical" Massachusetts Chapter 151 overtime provision, Plaintiffs have failed to plead an employment relationship. They have not alleged anywhere in the Amended Complaint which of the seven named Defendants had the power to hire or fire them, supervised or controlled their work schedules or conditions of employment, determined their rate and method of payment, or maintained their employment records. Consequently, they do not even meet the practices held insufficient by *Iqbal,* such as pleading "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," let alone meet *Twombly's* requirement for enough facts to state a claim for relief that is plausible on its face. The Chapter 151 claim should be dismissed because it fails to plead a necessary employment relationship with any of the seven Defendants.

Plaintiffs' claims, whether in Counts 2, 6, 7, 10 or 11, fare no better and warrant dismissal under any other tests that Plaintiffs may argue apply. The single employer or integrated-enterprise test requires: (1) common management; (2) interrelation between operations; (3) centralized control over labor relations; and (4) common ownership. *Torres-Negron v. Merck & Co.,* Inc., 488 F.3d 34, 42 (1st Cir. 2007); *Roma v. U-Haul Int'l,* 233 F.3d 655, 662 (1st Cir. 2000). It is used to determine if a parent and subsidiary company should be treated as a single, integrated employer and more specifically where the parent corporation "directed the discussion, act, practice, or policy which the employee of the subsidiary was complaining." *Romano,* 233 F.3d at 665, *citing Papa v. Katy Industries, Inc.,* 166 F.3d 937, 941 (7th Cir. 1999); s*ee also Englehardt v. S.P. Richards Co.,* 472 F.3d 1 (1st Cir. 2006) (finding these elements of a single employer/integrated enterprise were not met); *Swallows v. Barnes & Noble Book Stores, Inc.,* 128 F. 3d 990 (6th Cir.1997) (same). It appears from the conclusory allegations of "common management," "integrated labor relations and human resources are centrally organized and controlled," and "common ownership and financial control"

that Plaintiffs seek to apply this test. (Doc. No. 49, ¶¶ 6, 7, 10) Here, Plaintiffs <u>fail to allege</u> which Defendant is the parent allegedly directing the actions complained of and which Defendant is the subsidiary that engaged in each action against each Plaintiff, in addition to their failure as indicated in Section III.B. above to allege facts to support their conclusory pleading of the "buzz" words in the elements for this test. Nothing more than "labels and conclusions" and a "formulaic recitation of the elements" are present in Plaintiffs' effort to establish employment relationships, which *Iqbal* instructs is wholly insufficient. *Iqbal*, 129 S. Ct. at 1949-50.

Finally, Plaintiffs' allegation and wholly unsupported legal conclusion that Defendants are "and/or alter egos of each other" is insufficient and does not save their claims from dismissal. Under Massachusetts law, alter ego and agency theories are one and the same. *The Prudential Ins. Co. of America v. Turner & Newall PLC*, Civ. Action No. 85-2179-H, 1988 U.S. Dist. LEXIS 15960, *11-15 (D. Mass. Dec. 12, 1988). Alter ego is also known as the doctrine of corporate disregard. *Id; Miller v. Honda Motor Co.*, 779 F.2d 769, 772 (1st Cir. 1985). A party requesting a court to disregard the corporate form must establish the existence of two conditions. *Id.* First, the party must allege facts suggesting that representatives of one corporation exercise some type of pervasive control over the activities of another corporation; or that there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities. *The Prudential Ins. Co.*, 1988 U.S. Dist. LEXIS 15960 *4, *citing My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 618-619 (1968). Second, the party must show that piercing the corporate veil is necessary to defeat fraud or wrong to prevent gross inequity. *Id.* Only in those rare situations in which these two conditions exist may a court properly invoke the equitable doctrine of corporate disregard. *Id.*

Here, Plaintiffs have not pleaded facts to plausibly show pervasive control by one corporate

Defendant over the activities of one or more other Defendants.  There also is not a single allegation that piercing the corporate veil is necessary to defeat fraud or wrong to prevent gross inequity. Consequently, Plaintiffs' conclusory allegation of "and/or alter egos of each other" is of no significance and does not prevent dismissal of Plaintiffs' claims for failure to plausibly plead employment relationships with Defendants.

### C.   Plaintiffs' Claims Should Be Dismissed For Improper Claim-Splitting

All of Plaintiffs' claims should be dismissed based on improper claim-splitting. *See Curtis v. Citibank, N.A., Inc.,* 226 F.3d 133, 138 (2d Cir. 2000) (A district court has authority as part of its inherent power over its docket administration to stay or dismiss a suit that is duplicative of another case then pending in federal court.); *Greene v. H&R Block Eastern Enter., Inc*., Case No. 10-21663-CV-King, 2010 U.S. Dist. LEXIS 74896, *10 (S.D. Fla. July 26 2010) (same).  "When a plaintiff pleads a claim in federal court, he must, to avoid the onus of claim-splitting, bring all related state claims in the same lawsuit so long as any suitable basis for subject matter jurisdiction exists." *Kale v. Combined Ins. Co. of Am*., 924 F.2d 1161, 1165 (1st Cir. 1991).  The law prevents a litigant from claim-splitting, requiring that he "assert all his various legal theories and factually related allegations the first time he brings suit." *Id.* at 1166, *citing Rose v. Town of Harwich* 778 F.2d 77, 79 (1st Cir. 1985).  In the claim-splitting context, the appropriate inquiry is whether, *assuming that the first suit were already final*, the second suit could be precluded pursuant to claim preclusion. *Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.,* 296 F.3d 982, 987 n.1 (10th Cir. 2002) (emphasis added) (noting that a defendant *need not wait until one of the two actions reaches a final judgment* before moving to dismiss based on improper claim-splitting); *see also Curtis,* 226 F.3d 133, 139-140 (2d Cir. 2000) ("[t]he normal claim preclusion analysis applies and the court must assess whether the second suit raises issues that should have been brought in the first," although the rule against duplicative litigation is distinct from but related to claim preclusion or *res judicata*).

Claim preclusion is present when: (1) the earlier suit resulted in a final judgment on the merits; (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related; and (3) the parties in the two suits are sufficiently identical or closely related. *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 12 (1st Cir. 2010).  Claim preclusion, and by extension prohibiting claim-splitting even before a final judgment is reached in either case, protect litigants from gamesmanship and the added litigation costs of claim-splitting, and prevent scarce judicial resources from being squandered in unnecessary litigation. *Id.* "Those interests are especially implicated where the plaintiff had every opportunity to fully litigate its various claims against the full range of defendants in an earlier suit and made the strategic choice not to do so." *Id.* Prohibiting claim-splitting also protects parties from "the vexation of concurrent litigation over the same subject matter." *Curtis*, 226 F.3d at 138.

Here, Plaintiffs engaged in improper claim-splitting when they chose to file a Complaint in this Federal Court on September 3, 2010**,** in Civil Action No. 4:09-cv-40152 ("Civil Action 40152" or "First Suit")[7], and one week later filed a second suit through a Complaint in the Superior Court of the Commonwealth of Massachusetts against the same Defendants (minus Defendant UMass Memorial Healthcare 401K).  The second suit was removed to this Court on October 16, 2009, and became this action due to original federal question jurisdiction created by Section 301 preemption ("Civil Action 40181" or "Second Suit"). (*See* Doc. No. 1, Civil Action 40181).  Plaintiffs continued their improper claim-splitting when they filed their First Amended Complaints on October 11, 2010 in the First Suit, Civil Action 40152 (Doc. No. 48), and in the Second Suit, Civil Action 40181 (Doc. No. 49).

The original and amended Complaints in both proceedings allege similar and in many ways

---

[7] This Court may take Judicial Notice of the Complaint Plaintiffs filed in Civil Action No. 4:09-cv-40152, United States District Court, District of Massachusetts, Doc. No. 1.

identical underlying facts and rely on the same alleged transactions and occurrences. They also allege that Plaintiffs were not fully compensated for all hours spent working during pre-liminary and post-liminary activities, meal breaks, and training time. Although the Second Suit asserts different Counts than the First Suit, the same common nucleus of facts and transactions are at issue.[8]   In   the event this Court finds that Plaintiffs' remaining claims are not preempted by Section 301 or otherwise dismissed, this Court would nonetheless have subject matter jurisdiction over them pursuant to supplemental jurisdiction under 28 U.S.C. § 1367. Consequently, they are claims with a "suitable basis for subject matter jurisdiction" in this Court as discussed in *Kale,* and they should have been included in the original Complaint filed in Civil Action No. 4:09-cv-40152.   *See Strickland v. City of Albuquerque*, 130 F.3d 1408, 1413 (10th Cir. 1997) (Plaintiff could have pursued state law claims in federal court pursuant to supplemental jurisdiction together with a claim under 42 U.S.C. § 1983 rather than initiating two separate actions). *Assuming but not requiring that the First Suit were already final here*,[9] the Second Suit (this instant action) would be precluded pursuant to claim preclusion, thus confirming Plaintiffs' improper claim-splitting. *See Hartsel Springs,* 296 F.3d at 987 n.1. Accordingly, Plaintiffs claims in this Second Suit should be dismissed.

## V.   CONCLUSION

Plaintiffs' Motion for Judgment on the Pleadings should be granted and Plaintiffs' Amended Complaint should be dismissed in its entirety with prejudice.

---

[8] The presence of the same parties, alleged facts, and needed individualized analyses regarding each Plaintiff's circumstances as to who worked when, how each person was compensated, which of the many different policies applied to each particular person, and how each person should have been compensated given their particular situation will require the same exchange of discovery, investigations, witnesses, and depositions in each Civil Action. While the allegations in each set of Complaints are similar, the work circumstances, applicable policies and compensation practices for Plaintiffs and purported Class Members are dissimilar and will require individualized analyses given the unique factual circumstances among the Plaintiffs, purported Class Members, various Defendants, and different departments, supervisors, and practices within each Defendant.

[9] *See Bluegreen Corp.,* 296 F.3d at 987 n.1. (stating the test is if a final judgment were assumed in the first suit, would claim preclusion apply?)

UMASS MEMORIAL HEALTH CARE, INC., UMASS
MEMORIAL HOSPITALS, INC., UMASS MEMORIAL
MEDICAL CENTER, INC., HEALTHALLIANCE
HOSPITALS, INC., MARLBOROUGH HOSPITAL, THE
CLINTON HOSPITAL ASSOCIATION, AND WING
MEMORIAL HOSPITAL CORPORATION,

By their attorneys,

*/s/ Lisa A. Schreter*
Lisa A. Schreter
Angelo Spinola
LITTLER MENDELSON, P.C.
3344 Peachtree Road, N.E.
Suite 1500 Atlanta, GA  30326
Phone: 404.233.0330
Fax: 404.233.2361
lschreter@littler.com
aspinola@littler.com

Gregory C. Keating (BBO # 564523)
LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, MA  02110
gkeating@littler.com

Dated this 17th day of November, 2010.

## CERTIFICATE OF SERVICE

I, Lisa A. Schreter, hereby certify that on this 17th day of November, 2010, the foregoing Defendants' Memorandum of Law in Support of Motion for Judgment on the Pleadings was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, will be sent electronically to the registered participants as identified on the Notice of electronic filing and also via first class mail to plaintiffs' counsel of record:

Jody L. Newman
Ariatna Villegas-Vasquez
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston, MA 02210-2211

Patrick J. Solomon, Esq.
Michael J. Lingle, Esq.
THOMAS & SOLOMON LLP
693 East Avenue
Rochester, NY 14607

*/s/ Lisa A. Schreter*
Lisa A. Scheter

Firmwide:98531960.1 058224.1002